May it please the Court, I'm John Cappell from the Appellate Staff, Civil Division, U.S. Department of Justice, and I'm representing the appellants, the Secretary of the Interior, and several other officials who were sued in their official capacity. This case involves the Indian Self-Determination and Education Assistance Act, which is commonly referred to as the ISTA. The ISTA enables Indian tribes, it promotes Indian sovereignty by enabling Indian tribes to take over and run federal programs that were previously being run for them by the federal government, either the Bureau of Indian Affairs at Interior or the Indian Health Service at HHS. But what the ISTA is not is a freestanding federal grant program or a substantive source of funding. Here the BIA declined the plaintiff's proposed ISTA contract for approximately $750,000 because the BIA was not providing law enforcement services to the plaintiff. And this declination does not violate the ISTA, the Administrative Procedure Act, or the Fifth Amendment to the Constitution. The district court has enjoined the BIA from declining plaintiff's ISTA contract solely on the basis of the fact that California is a public law 280 state. But that is not the reason why the BIA enjoined the or why it declined the contract. It did it because it was not providing services, providing law enforcement services. And what this really is is essentially an attempt to challenge BIA's funding decisions under other statutes through the device of a proposed ISTA contract and thereby to do an end run around cases like the Supreme Court's decision in Lincoln v. Vigil and this Court's decision in Serrato v. Clark, both of which establish that these sorts of funding decisions are not subject to judicial review under the APA and that they also do not violate the APA's notice and comment rulemaking requirements because they involve a general statement of policy. But does the BIA receive a lump sum appropriation to spend on law enforcement? The BIA receives a certain amount. I believe that the Skabean Declaration, which is in the excerpt of the record around pages 21 and 22, sets out the process, the appropriations process. And what it does, the BIA ---- Is it a yes? I'm just trying to figure out. Yes. Okay. The appropriations statute would provide an amount that would, and it would include and it would also designate within that larger amount a smaller amount for, say, law enforcement services. And that is how the funding for substantive programs is provided by Congress. And do you agree that California's law enforcement in Indian country is inadequate? Well, no, Your Honor. We do not agree with that. The main problem here is that the BIA obviously is very strapped for funds. That's not what I asked you. I asked you whether you thought, do you think that California is able to adequately address law enforcement in Indian country, including this tribe? Well, again, given the BIA's limited resources, the answer is yes. No, that's a separate question. So I'm just asking, do you think California is able to adequately address law enforcement in Indian country? I understand it's a public law 280 state. What's your answer to that? I understand that BIA is strapped for resources, and we're going to get there in just a second. But do you think it's adequate? Well, it's the best that is possible under the circumstances, given the fact that the BIA has to provide funding across the country and do its best to give law enforcement services all around the country. Well, is it true that the BIA funds law enforcement services in non-public law 280 states or in Indian country? In non-public law 280? Yes, it does. Yes, it does. But it also does, I would also point out that it does in public law 280 states as well, and that this so-called policy, hard and fast policy against it is really a chimera. It doesn't exist. Well, in which public law 280 states does it fund it? Is it only those where the Indian country straddles the border of a non-public law state and a public law state? No, Your Honor, it's not only that. This is set forth in the declaration of Darren Cruzan at pages 42 through 43 of the excerpts of record. It also provides funding in at least three other situations, one where the tribe and here we're talking about California alone, one where the tribe has determined to use part of its tribal priority allocations for law enforcement services, another where in the specific case of the Hoopa and Yurok tribes where there has been a there have been conflicts over fishing rights, and because of the problems, the potential criminal problems that that has given rise to, the BIA has also has entered into ISTA contracts. It has provided funding, law enforcement funding, directly to those tribes. And the third additional category is where under so-called self-governance contracts under Title IV of the ISTA, which is similar but somewhat different, but where those tribes have decided to use their funding, their self-governance funds for law enforcement, and there, too, there have been. And so, Mr. Carbone, I'd like to ask you a question which is, I believe, tangentially relevant, but you could, it's not part of the briefing, but did you see the article in the New York Times on February 26th, which is entitled Rape on the Reservation? Are you familiar with that? I believe I noticed that. By Louise Ehrlich. Now, among other things, she says, she doesn't have documentation, but let me read you the line from the fourth paragraph. The Justice Department reports that one in three Native women is raped over a lifetime. Does that sound credible to you? Your Honor, I certainly, I can't profess any knowledge on that score. That's far beyond the record in this case. It's far beyond the record. It's just the background. But, of course, the gist of this article is that because the states aren't funding these things, this particular crime, rape, is running rampant on the Indian reservation for non-Indians. I mean, it's a fairly shocking situation. Again, I certainly, Your Honor, I certainly recognize that fact. But, again, the BIA's resources are extraordinarily limited, and, therefore, it has to target them as effectively as it can. And, again, those funding decisions, they're not done under the ISTA, and they're discretionary and not subject to judicial review. So they're not properly before the court here. So what should the tribe do to address the law enforcement problem? What are its options? Because we have, I guess, apparently a tribe of 318 individuals covering, I don't know, if it was 25,000 acres or some large number of acreage. Apparently it's very hard to get to, or there's delay, which is universal in most Indian country locations, whether you're public law 280 or non-public law 280. But, I guess, in particular, the delay is noted in terms of response. It looks like you have a pool of money that you all have to decide how to distribute it. And Mr. Kruzan's declaration sets out what the methods are or how they've gone about doing it. And it looks like, despite California's provost funding, is still needed in other states that are not PL 280 states. So what is this tribe to do? I mean, it just has to rely on the current situation. There's no other alternatives because of the lack of resources? Well, Your Honor, again, there have been ‑‑ it has gotten special law enforcement commissions from the Federal Government that enables ‑‑ The COPS program grants, is that what you're talking about, in the past? Well, the COPS program, that's something different. I was talking about the actual special ‑‑ their special law enforcement commissions are known as SLECs. SLECs. Which enable the tribe to enforce federal law concerning the sorts of crimes that I believe the Court has alluded to. But there's no, again, they can do their best also to work in tandem with the state and to try to maximize the state's assistance and improve the state's response time in dealing with these crimes as well. But, again, all of this is essentially beside the point because this is an ISTA case and the ISTA simply does not provide, it's not a separate source of substantive funding. It only enables the tribe to take over an existing program. So can, I think, maybe I'll ask Judge Merguia's question a different way. Are there other Interior Department sources of funding to which the Indian tribe could seek access to help with this problem? Not to my knowledge. I believe that the funding, the finite funding is basically, they can certainly, they can ask, they can avail themselves, they can make requests of BIA to provide whatever grants are available. But that will not, that won't cure the basic deficiency regarding funding overall, which is what causes the problem, the substantive funding problem, again, which is not before the Court here. Does the Department of Interior have any obligation for law enforcement over Indian country? Any obligation at all? It has a general obligation. It provides, it has primary responsibility in non-public law 280 states. And, but that's the, that's precisely the public law 280 was enabled, was enacted to give the states the, like, the primary responsibility for criminal law enforcement in the, in tribal areas. So if tomorrow California passed legislation and decided it was not going to be a public law 280 state, would you have to step in? Would the Department of Interior have to step in? Your Honor, I don't think that California can do that. It's not an optional, it's not an optional public law 280 state. There are some optional public law 280 states. But I believe that California is one of the six, and the others are Alaska, Minnesota, Wisconsin. Is that as a result of federal law? Excuse me? Yes, that is under federal law. Okay. That is public law 83-280. And if there are no further questions, I would preserve the balance of my time for rebuttal. All right. Thank you. Thank you, Your Honors. My name is Dorothy Arthur, and I'm here representing the Apehli-Las Coyotes Band of Cahuilla and Campeño Indians. I have to just make some corrections. First of all, the last statement made that California can't retrocede, or tribes in California can't retrocede. Yes, they can. The retrocession is available to even tribes that are in the mandatory PL-280 states. Well, they'd have to go through Congress. No, it's a state process. They actually have to take it through the state legislature, and then the governor has to sign it. So it's a state political process. Wouldn't the state be more than willing to send the cost of law enforcement back to the feds? You know, you would think that. But it really, at the sheriff's level, it gets very territorial, and, you know, we want to make sure that we control and have a presence on the reservation, even though it's a very weak one. Well, how do we get the money out of the federal government if they haven't got it? That is a very good question, but I really don't think, up to this point, the Office of Justice Services and the BIA has ever really been willing to approach Congress for additional funding. I did note in the former Office of Justice Services record that was made in the Hopland informal hearing case, which was dealing with the same issue, the attorney for the Congress and sort of see if we can work on getting special appropriation. And he basically said no. So I understand that the money's not here, but I think there is a bigger issue for me or my client in this case. I do want to note that there is the issue here. Is it the denial of the contract, or is it the lack of funding, you know, of public law, of law enforcement and public law 280 states? This is the bigger issue for me, and it was something that I raised to the solicitor in our informal hearing. If Congress tomorrow appropriated $50 million additional funding to law enforcement, lump sum, as long as the Office of Justice Services has a policy that says we do not fund in public law 280 states because it's the responsibility of the state, or their other argument is we can't contract with you unless you have an existing contract, we're never going to see that money. So no matter how much money Congress appropriates, until we can resolve these policy and why we're here today, this misconception of public law 280 and the need for law enforcement, but more importantly, this policy. Kagan. Well, but then let's go with the law then here and see if you can show me how you can do that, because if you're talking about the denial of the contract, isn't the denial authorized by 25 U.S.C. section 45FA2D? I mean, what's your best argument against that? Well, I guess where I will start is whether or not law enforcement is a contractable program and service. All right? And we have plenty of support, legal, both statements by the Office of Justice Services. They contract out 165 law enforcement contracts, 2,000 U.S. Attorney General opinion specifically says that the BIA and Public Law 280 States can contract their responsibility. The Hopland v. Norton case coming out in Northern California found that law enforcement services are in fact contractual. We have Navajo v. Department of Human Services, which also dealt specifically with the issue of is a program contractual, and concluded that is law. I want to understand. So are you saying it's not contractual? It is contractual. Well, but then if it is contractual, then I'm trying to, and I really do want to make sure I understand, doesn't this provision, the 450FA2D, address contractual law, contracts with law enforcement? Right. But it's the argument of the government here that it's not a contractual program because it's not currently being provided. So I guess where I wanted to start is let's all agree it's contractual. So the next step is the argument that, well, it has to be currently being provided in order for us to contract with you. That is a real distortion of the exact language of the Indian Civil Rights or, I'm sorry, of the Indian Self-Determination Act. There is nothing in that Act that says if it's a contractual service, you can't contract for it unless the OJS is currently providing that service. And that's what they're arguing. They're saying you can't get a contract because you don't already we're not already providing a service. So, and to rely on some of the statutory language of the Indian Civil Rights or, I'm sorry, OJS that supports that is specifically in 1988, the Indian Self-Determination Act was being revived in large part because the Secretary of Indian Health Service and the Secretary of the Bureau of Indian Affairs were repeatedly getting it wrong. And what the legislative history you'll find there is Congress made specifically clear that any program or service that is available to contract, regardless of if it's being contracted for at the local level, is not a basis to deny that contract. So the Office of Justice Services, in their advancement of this argument, we can't contract with you unless we're currently providing the services inconsistent with the clear language of the Indian Self-Determination Act as well as the legislative history of the Act. The other, like I said, point that they have been trying to sort of sidestep now is that they don't provide law enforcement services in PL-280 States, in California, because the State bears that responsibility. And that was right in their declaration or declination. They said the State bears the cost for providing law. We don't do it. BIA does not do it. That is just wrong. The Office of Justice Services has an ongoing obligation to tribes for all its trust responsibilities in nonpublic law – in public law and nonpublic law 280 States. Okay? And I do really think that I really appreciate your first question, was do you think that there is a need – if there's law enforcement issues on California tribes that are not being met? And that's really a fundamental flaw, again, in what OJS is doing here, is what it's saying is, well, you have the State over here, and they can enforce criminal laws. But Public Law 280 didn't just address criminal laws. It basically also addressed civil as well as regulatory jurisdiction. The State of California cannot enforce a tribal eviction order. They can't enforce a tribal exclusion order. They can't enforce tribal environmental laws, tribal codes. All of that body of civil and regulatory law is exclusively within the jurisdiction of the tribe. And, you know, I do a lot of Indian housing, and it – the Ninth Circuit several years ago found that there was no Federal-questioned jurisdiction over tribal eviction cases. And so those cases now have to be heard and tried and enforced through tribal courts. And what do I do by going in, and I can't get – I can get an eviction order, but how am I going to enforce it? I'm still not understanding, though. I mean, you're making some points here. I'm trying to see how they relate to the issues in front of us and to the structure and the statute that's in place. Help me understand. I just want to make sure I understand your argument, and I'm not – I feel like I'm not capturing it. One of the things that the OJS has said in this case is that we're not going to provide funding because you're in a public law 280 State, and the State of California has full responsibility for law enforcement on your reservations. My point is, one, as you pointed out, the criminal law enforcement, oftentimes there is no response or there is a delayed response. My point is, is that you can't just narrowly look at law enforcement needs in California Indian reservations to necessarily crimes – murder, rape, whatever. There's a lot of other types of activity on reservations that make it an unsafe community that may not fall within this California State's criminal concurrent jurisdiction. And what I wanted to point out, that there is a broad area of need for tribal law enforcement that doesn't necessarily fall simply under criminal penal code sections. Take me the next – I'm not – okay. What's your next step, though? I mean, I don't know. Well, I'm trying to rebut their argument that there is no need for California provides all of the need. What I'm saying is, OGS, before you write us off as, oh, you're in a public law 280, California State is going to take care of you, come and look at what the need is. You've never done that. You've never come out and addressed what the needs are in our community before you made this policy that says we're not going to fund you. But you agree it's a policy. I mean, I'm just trying to figure out how we, as a court, you know, interfere with the policymaking decisions of this agency. So I'm just trying to – this is an important opportunity for you to, you know, try to lay out your case here. Well, I guess what I'm looking for the court – from the court is affirming the lower court that one – that found this policy violated the non-regulatory requirements under the Indian Self-Determination Act. That's a good point. Let's talk about that, because I'm not sure – what does the Secretary need to do to comply with the district court's order? Because the district court says the Secretary doesn't need to fund the contract, but I'm having trouble seeing what else would satisfy the district court. I think what the district court is saying is that if you are going to abide by this type of policy, you have to promulgate it. This has to go out as a notice to tribes. There needs to be consultation. There needs to be input from the tribes on this proposed, you know, policy that is definitely impacting – seriously impacting tribes in non-PL-280 states. The other thing is, is that aside from promulgating it and having it put public, the other thing is, is that there has to be some looking at the needs of California tribes in order to overcome the equal protection violations as well as overcoming the non-regulatory nature of the policy. So I think what the lower court is saying is you can't come in and just say, ah, public law 280 state, you don't get a contract. If you really want to utilize that as a basis of declination of a contract, you've got to promulgate it, okay? Because the Indian Self-Determination Act makes very, very clear that you only have those basis for declining the contract. Where does the district court say that? Because I didn't see where the district court said that. Well, I think the district court in finding that the policy violates the APA would essentially be a holding saying that if you want to continue to rely on this policy, you're going to have to promulgate it. Otherwise, it will continue to be in violation of the APA notice and comment provision. So the way I read what the district court did is that the BIA came in and said, we're denying this funding under this section 450 FAA 2D because the proposed request for funds exceeds the applicable funding level that the secretary otherwise would have provided. So that's its legal reason. But in reality, the district court looks through this legal reason and said, you know, the real reason is your unwritten policy of denying funding to 280 states. And I'm going to enjoin you from using that as the basis for denying law enforcement because that's service funding, because that's really what you're doing. And if you're going to do it really on that basis, then you have to do the APA rulemaking. Correct. Because their legal argument is solid. I mean, if you look at the statute, that's solid. What he's saying is that that's not the real reason. That's what the court's saying. I'm going to look through to what's really going on here. Exactly. It sort of begs the question of why is there zero funding then in, you know, California for law enforcement? My question is, can a court do that? I mean, that's like, what is the legal basis for a court saying, you know, that this may be what you're representing as your real reason because you're following the statute, but that's not your real reason? Well, I think that there was plenty of authority before the court to support its finding that there is a policy here. Which BIA disputes exist. Right, but lawyers dispute a lot of different things, but the court essentially relied on the record that was presented, which in my opinion was pretty overwhelming when I've got two former OJS directors as well as a solicitor, as well as, you know, a promulgated regulation to make this policy into a regulation and a committee, a congressional committee, saying you can't do that. To then come back and say, oh, no, we don't really have a policy is a little disingenuous. Well, the cruising declaration itself admits there's this policy. It's not a policy. It doesn't really call it a policy, but it admits that that's what's going on. All right. Thank you. I think we understand the issues. With all due respect, I would emphasize that the court has understood the basic problem here perfectly, and that is that the plaintiff is making a policy argument here regarding funding that has no place under the ISTA itself. And as for the unwritten policy, the cruise and declaration establishes that there is no such policy, and the examples that we have refuted all of the examples at length, especially in our reply brief, but also in our opening brief, there is no such hard and fast policy in public law 280 states. And a plaintiff is making a policy argument here, and the basic problem is inadequate funding for Indian services generally, including law enforcement services. But one cannot use the device of the ISTA to try to do an end run around the limitations of the ISTA itself. So I hope that I've answered all of the court's questions, but I would urge the court, and again, on the injunction, has the court recognized that the injunction doesn't even say anything about APA rulemaking? It simply says it enjoins the BIA from denying or declining an ISTA contract to plaintiff solely on the basis of the fact that California is a PL-280 state. But again, that's not what the BIA does, and that is not what is at issue under the ISTA. And in closing, the last point I would make is that this Court's Navajo Nation en banc decision really has nothing to do with this. That did not involve a declination under Section 450F-2, but rather the question of whether the type of contract that was at issue there, which was to provide services under the Temporary Assistance to Needy Families Act, which was a statute of general applicability, whether the BIA, whether that was subject to the ISTA, and the court held that it wasn't because that was not for the benefit of Indians because of their status as Indians. It had nothing to do with the fact that no funding was available, as is the case here. All right. Thank you, counsel. Thank you. Thank you all for your time. Those Coyote Spans of Coahuila and Campino Indians v. Salazar is submitted.
judges: Noonan, Wardlaw, Murguia